1

2

3

4

5

6

7

8

9

10

11

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

12

13

14

15

16

17

MICHAEL JOSEPH PRATT,

Plaintiff,

v.

LAWRENCE S. GAMBOA, et al.,

Defendants.

Case No. 17-CV-04375-LHK

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 68

18

19

20

21

22

23

The instant case arises from Plaintiff Michael Joseph Pratt's ("Plaintiff") claims of deliberate indifference to medical conditions under 42 U.S.C. 1983 against Defendants Darrin Bright, John Dunlap, Lawrence Gamboa, Stephanie Phan, and Janet Lewis ("Defendants"). Before the Court is Defendants' motion for summary judgment.  Having considered the arguments of the parties, the Court GRANTS in part and DENIES in part Defendants' motion for summary judgment.

24

**I.    BACKGROUND**

25

**A.  Factual Background**

26

Plaintiff Michael Joseph Pratt ("Plaintiff") is currently incarcerated in Salinas Valley State

27

1

28

Penitentiary ("SVSP"), where Plaintiff has been located since August 2, 2000.  ECF No. 68 at 5.

Plaintiff suffers from severe chronic back pain and seizures caused by cervical degenerative disc

disease and spinal stenosis.  *Id.* at 5–6.  The instant case arises from three separate alleged

incidents that occurred during Plaintiff's confinement at SVSP, which the Court outlines below in

chronological order.

### 1.  Alleged 2013 Denial of Gabapentin

First, Plaintiff alleges that "[o]n or around September 22, 2013, [Defendant] Gamboa

refused to dispense Plaintiff's Gabapentin,"[1] which led Plaintiff to suffer a seizure on October 3,

2013 in his cell.  SAC ¶ 32.

As of September 4, 2013, Plaintiff was prescribed morphine and numerous other

medications.  ECF No. 69-7 at B-28.  Plaintiff had no prescription for Gabapentin as of this time,

however.  *Id.*  On September 19, 2013, Plaintiff submitted a health care services request form to

SVSP officials that indicated that Plaintiff's "medications [would] run out on" September 22,

2013.  ECF No. 69-7 at B-4; ECF No. 68-2 ("Gamboa Decl.") ¶ 5.  On the form, Plaintiff stated

that Plaintiff "need[ed] a bridge till I see the doctor."  ECF No. 69-7 at B-4; Gamboa Decl. ¶ 5.

On the following day, September 20, 2013, Plaintiff informed a nurse, "My morphine runs out on

Sunday the 22nd and you need to go tell the doctor to give me a bridge order or else I'm gonna go

man down on Sunday."  ECF No. 69-7 at B-5, B-6; Gamboa Decl. ¶ 5.

On September 24, 2013, SVSP's Pain Management Commission decided to wean Plaintiff

off of morphine because it concluded that Plaintiff's condition was "mild."  ECF No. 69-7 at B-14.

On September 26, 2013, Plaintiff submitted another health care services request form to SVSP

officials.  *Id.* at B-8.  Plaintiff explained that Plaintiff had a history of chronic spinal pain and

Plaintiff cited numerous past spinal operations.  *Id.*  Plaintiff asserted, "Now, when I really need

my chronic pain medication . . . , it is being stopped.  I don't want to go man down, but, my pain is

---

[1] Gabapentin is "an anticonvulsant medication that affects chemicals and nerves in the body that are involved in causing seizures and neuropathic pain."  ECF No. 68-4 ("Phan Decl.") ¶ 4.

Case No. 17-CV-04375-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

1    real bad." *Id.* (ellipsis in original); Gamboa Decl. ¶ 6.

2         On October 3, 2013, Plaintiff then submitted a third health care services request form to

3    SVSP officials.  ECF No. 69-7 at B-5, B-6.  Plaintiff explained that Plaintiff "woke up on the

4    floor, after a seizure . . . I've had many throughout my life.  The problem[] is my P.C.P. [*i.e.*,

5    primary care provider, Defendant Gamboa] has stopped my seizure medication.  I'm under

6    extre[]me stress right now . . . that is triggering them.  This s[ei]zure has reinjur[]ed my post-

7    operations." *Id.* at B-9.  Defendant Gamboa stated in a declaration that "[a]t no time during my

8    care and treatment of [Plaintiff] did I withhold Gabapentin from him."  Gamboa Decl. ¶ 4.

9         On October 9, 2013, Plaintiff met with Defendant Gamboa, Plaintiff's primary care

10   provider, in what was listed as a "follow up visit for narcotic denial."  ECF No. 69-7 at B-14.  In

11   the visit notes, Defendant Gamboa indicated that Plaintiff had suffered a seizure on October 3,

12   2013.  *Id.*  Defendant Gamboa explained that SVSP's Pain Management Commission had

13   previously concluded on September 24, 2013 that Plaintiff should be weaned off his pain

14   medications.  *Id.*  Defendant Gamboa noted that Plaintiff would be administered Plaintiff's last

15   dose of morphine on October 20, 2013.  *Id.*  Plaintiff's morphine prescription terminated thereafter

16   on October 20, 2013.  *Id.* at B-48.  On October 22, 2013, Defendant Gamboa offered Plaintiff

17   nonsteroidal anti-inflammatory drugs like Tylenol to manage his back pain, but Plaintiff declined

18   at that time.  *Id.* at B-54.  Based on Plaintiff's conduct, Defendant Gamboa also referred Plaintiff

19   to "mental health for drug (narcotics) seeking behavior."  *Id.* at B-25.

20        **2.   Plaintiff's 602 Appeal**

21        Second, Plaintiff alleges that "Plaintiff appealed the decision to take away his TENS unit[2]

22   on or around October 8, 2013 [].  Plaintiff also requested daily showers to alleviate his muscle

23   pain.  And Plaintiff requested to be in a cell alone because he was fearful his cellmate might harm

24

25   _____
     [2] A "TENS unit" is a transcutaneous electrical nerve stimulation device.  SAC ¶ 24.
26   "Transcutaneous electrical nerve stimulation refers to the use of a small battery-operated device to
     provide continuous electrical impulses via surface electrodes, with the goal of providing
27   symptomatic relief by modifying pain perception."  ECF No. 68-1 ("Dunlap Decl.") ¶ 11.

3

28   Case No. 17-CV-04375-LHK
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
     JUDGMENT

United States District Court
Northern District of California

him due to his cries of pain." SAC ¶ 27.  Plaintiff alleges that Defendants Gamboa, Bright, Dunlap, and Lewis unlawfully denied these requests.  *Id.* ¶¶ 39–60.

Under operative regulations, California prisoners may appeal "departmental policies, decisions, actions, conditions, or omissions that have a material adverse effect on [] welfare . . . ." Cal. Code Regs. tit. 15, §§ 3084.1, *et seq.*  The regulations require that the prisoner "use a CDCR Form 602 (Rev. 08/09), Inmate/Parolee Appeal, to describe the specific issue under appeal and the relief requested."  *Id.* at § 3084.2(a).

On October 4, 2013, Plaintiff submitted a CDCR Form 602 (the "602 Appeal").  ECF No. 69-6 at A-4.  On the CDCR Form 602, Plaintiff indicated that Plaintiff sought an increase in pain medication.  *Id.* at A-4, A-11.  Plaintiff also sought a transcutaneous electrical nerve stimulation unit ("TENS unit").  *Id.*; SAC ¶ 24.  Finally, Plaintiff sought single cell status as well as authorization for daily showers.  ECF No. 69-6 at A-4.  On November 20, 2013, Defendant Gamboa interviewed Plaintiff in connection with the appeal.  *Id.*  Defendant Gamboa and Defendant Bright, the Chief Physician of SVSP, denied these requests.  *Id.*

On December 30, 2013, Plaintiff appealed the foregoing denials.  *Id.* at A-13.  On February 7, 2014, Defendant Dunlap, the Chief Medical Executive of SVSP, denied Plaintiff's second-level appeal.  *Id.* at A-14.  Defendant Dunlap cited the facts that Plaintiff had been prescribed "Tylenol #3, two tabs twice a day," and that Plaintiff had held several jobs over the past two months that suggested pain did not significantly interfere with Plaintiff's daily life.  *Id.*

Finally, on February 24, 2014, Plaintiff appealed the foregoing denials to the third available level of review.  *Id.* at A-4.  On May 16, 2014, Defendant Lewis, the Deputy Director for Policy and Risk Management Services of California Correctional Health Care Services, once again denied Plaintiff's requests.  *Id.* at A-3.  Defendant Lewis noted that on April 15, 2014, Plaintiff's pain medication had been changed to methadone.  *Id.* at A-1.  Defendant Lewis also indicated that "[a]t this time there is no documentation or medical justification for a TENS unit, single cell, [or] daily showers."  *Id.*  Defendant Lewis added that SVSP's health care staff may only make a

4

Case No. 17-CV-04375-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1  recommendation that an inmate receive single cell status, but that the final determination is made

2  by the Institutional Classification Committee.  *Id.* at A-2.  Defendant Lewis concluded that

3  Plaintiff's "medical condition has been evaluated and [Plaintiff was] receiving treatment deemed

4  medically necessary."  *Id.*  Defendant Lewis therefore denied Plaintiff's appeal, and stated that

5  "[t]his decision exhausts [Plaintiff's] administrative remedies."  *Id.* at A-1.

### 3.  Alleged 2016 Denial of Gabapentin

7  Third, Plaintiff alleges that "[o]n or around September 12, 2016, [Defendant] Phan

8  withheld Plaintiff's Gabapentin," which led Plaintiff to suffer a seizure on September 29, 2016 in

9  his cell.  SAC ¶¶ 34, 35.

10  Defendant Phan treated Plaintiff and prescribed medicine via telemedicine between July

11  2016 and September 2016.  Phan Decl. ¶ 5.  Defendant Phan had a telemedicine visit with Plaintiff

12  on July 19, 2016.[3]  *Id.* ¶ 6.  Plaintiff complained about pain during the visit.  *Id.*  Further,

13  Defendant Phan noted that Plaintiff's "case [was] one of the few times I have seen Gabapentin

14  dosed using 800mg pills over the past ten years."  *Id.*  Accordingly, Defendant Phan increased

15  Plaintiff's Gabapentin dose from 800mg three times per day to 900mg three times per day.  *Id.*

16  Plaintiff's SVSP medical records indicate that Plaintiff received the increased dosage through at

17  least September 29, 2016.  ECF No. 69-8 at C-4–C-13.  Defendant Phan stopped working at SVSP

18  on September 16, 2016, and Defendant Phan's last telemedicine visit with Plaintiff occurred on or

19  around this date.  Phan Decl. ¶¶ 7, 8.

20  On September 29, 2016, Plaintiff was admitted to Natividad Medical Center because

21  Plaintiff reported that he had had a seizure.  ECF No. 69-8 at C-14.  The Natividad Medical Center

22  physician who saw Plaintiff reported that Plaintiff had in fact only received Gabapentin at a dose

23  of 600mg three times per day.  *Id.*  Defendant Phan declares that "[a]s a telemedicine physician, I

24  was never in a position to prevent [Plaintiff] from receiving his medication nor would I ever

25

---

26  [3] Defendant Phan's declaration erroneously states that the visit occurred on "July 19, 2019," but it
is clear from context that this is a typographical error and that the visit in fact occurred on July 19,

27  2016.  Phan Decl. ¶ 6.

28  Case No. 17-CV-04375-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

United States District Court
Northern District of California

intentionally prevent any patient from receiving prescribed medication."  Phan Decl. ¶ 7.

### B. Procedural History

On August 2, 2017 Plaintiff filed the original complaint in the instant case pro se.  ECF No. 1.  The original complaint named twenty-three different defendants, including all of the current Defendants.  ECF No. 1-1.  In the original complaint, Plaintiff alleged a claim for deliberate indifference under 42 U.S.C. § 1983 pursuant to numerous theories.  *Id.*  On the same day, August 2, 2017, Plaintiff filed a motion seeking the appointment of a guardian ad litem or counsel.  ECF No. 3.  On November 2, 2017, the Court dismissed Plaintiff's complaint with leave to amend in the course of preliminary screening.  ECF No. 6 at 1.  The Court denied without prejudice Plaintiff's request for a guardian ad litem because the Court concluded that there was "not a substantial question as to plaintiff's mental competency."  *Id.* at 6.  The Court also denied without prejudice Plaintiff's request for the appointment of counsel because "[a]t this juncture, plaintiff has not yet stated a cognizable claim for relief."  *Id.*

On December 5, 2017, plaintiff filed a motion for a temporary abeyance of the case or an enlargement of time within which to comply with the court's order.  ECF No. 7.  Plaintiff also again requested appointment of a guardian ad litem or counsel.  *Id.*  "[O]ut of an abundance of caustion," on March 8, 2018, the Court granted in part Plaintiff's motion and appointed counsel solely to represent Plaintiff in connection with Plaintiff's request for a guardian ad litem.  ECF No. 8 at 4.

On October 3, 2018, after further briefing, the Court found "that plaintiff is incompetent to proceed *pro se* in this case."  ECF No. 16.  Accordingly, the Court stayed the case and ordered additional briefing on the question of who would serve as Plaintiff's guardian ad litem.  *Id.* at 4–5.  On November 14, 2018, the Court appointed Plaintiff's sister as guardian ad litem.  ECF No. 18.  The Court also continued and expanded the appointment of counsel for Plaintiff to represent Plaintiff through and for the full scope of the litigation.  *Id.*  On January 15, 2019, the Court lifted the stay of the instant case.  ECF No. 21.

Case No. 17-CV-04375-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff then filed the First Amended Complaint ("FAC") on January 16, 2019, which dropped all defendants except Defendants Gamboa and Phan.  ECF No. 23 ("FAC").  Plaintiff again alleged a claim for deliberate indifference to medical condition under 42 U.S.C. § 1983, but the sole theory Plaintiff asserted was that Defendants Gamboa and Phan withheld Gabapentin from Plaintiff.  *Id.* at 3.  On February 12, 2019, Defendants answered the FAC.  ECF No. 29.

On June 21, 2019, Plaintiff moved for leave to file an amended complaint.  ECF No. 43. On June 24, 2019, the Court granted Plaintiff's motion.  ECF No. 44.  Thus, on June 25, 2019, Plaintiff filed the Second Amended Complaint ("SAC"), the operative pleading.  ECF No. 45 ("SAC").  With the SAC, Plaintiff named Defendants Bright, Dunlap, and Lewis once more.  *Id.* at 6–8.  Plaintiff also added deliberate indifference claims based on Defendants' conduct in connection to the 602 Appeal, which Plaintiff alleged against Defendants Bright, Dunlap, Gamboa, and Lewis.  *Id.* at 5.  Accordingly, the SAC alleges 42 U.S.C. § 1983 claims for deliberate indifference against Defendants Gamboa and Phan based on their alleged denial of Gabapentin (the "Gabapentin Claims").  The SAC also alleges 42 U.S.C. § 1983 claims for deliberate indifference against Defendants Bright, Dunlap, Gamboa, and Lewis based on their conduct in connection to the 602 Appeal (the "602 Appeal Claims").

On February 27, 2020, Defendants filed a motion for summary judgment.  ECF No. 68 ("Mot.").  On March 10, 2020, Plaintiff opposed the motion, ECF No. 71 ("Opp'n"), and on March 17, 2020, Defendants replied, ECF No. 74 ("Reply").

## II.    LEGAL STANDARD

Summary judgment is proper where the pleadings, discovery, and affidavits show that there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Material facts are those which may affect the outcome of the case.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  *Id.*

Case No. 17-CV-04375-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

1     The party moving for summary judgment bears the initial burden of identifying those

2    portions of the pleadings, discovery and affidavits that demonstrate the absence of a genuine issue

3    of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party

4    meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own

5    affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial."

6    Fed. R. Civ. P. 56(e). If the nonmoving party fails to make this showing, "the moving party is

7    entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323.

8     At the summary judgment stage, the Court must view the evidence in the light most

9    favorable to the nonmoving party: if evidence produced by the moving party conflicts with

10   evidence produced by the nonmoving party, the judge must assume the truth of the evidence set

11   forth by the nonmoving party with respect to that fact. *See Leslie v. Grupo ICA*, 198 F.3d 1152,

12   1158 (9th Cir. 1999).

## III. DISCUSSION

14     Defendants argue that summary judgment is warranted as to each of Plaintiff's claims. As

15   to Plaintiff's claim that Defendants Gamboa and Phan withheld Gabapentin (the "Gabapentin

16   Claims"), Defendants argue that Plaintiff failed to exhaust administrative remedies under the

17   PLRA, and that Plaintiff has failed to produce a genuine issue of material fact necessary to entitle

18   Plaintiff to relief. As to the claims that concern Plaintiff's 602 Appeal (the "602 Appeal Claims"),

19   Defendants claim both that the statute of limitations bars these claims and, again, that Plaintiff has

20   failed to produce a genuine issue of material fact that would entitle Plaintiff to relief.

21     The Court considers these arguments in turn.

22     **A. The Gabapentin Claims are Barred by PLRA Exhaustion**

23     Defendants argue that Defendants Gamboa and Phan are entitled to summary judgment as

24   to the Gabapentin Claims because Plaintiff failed to satisfy the PLRA's exhaustion requirement

25   with respect to those claims. Mot. at 11. Plaintiff responds that Plaintiff should be excused from

26   satisfying the exhaustion requirement in the instant case. Opp'n at 10. The Court agrees with

*United States District Court*
*Northern District of California*

8

1    Defendants.  Plaintiff's failure to exhaust as to the Gabapentin Claims renders summary judgment

2    as to these claims appropriate.

3          "The PLRA mandates that inmates exhaust all available administrative remedies before

4    filing 'any suit challenging prison conditions,' including, but not limited to, suits under § 1983."

5    *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014) (quoting *Woodford v. Ngo*, 548 U.S. 81, 85

6    (2006)).  In order to assert an affirmative defense based on PLRA exhaustion, a defendant must

7    first show that there was an available administrative remedy that a plaintiff failed to exhaust.  *Id.*

8    at 1172.  Once the defendant does so, the plaintiff must produce evidence to show "something in

9    his particular case that made the existing and generally available administrative remedies

10   effectively unavailable to him."  *Id.*  To do so, a defendant may show "that administrative

11   remedies are not available, or that a prisoner's failure to exhaust available remedies should be

12   excused."  *Id.* at 1171; *see, e.g.*, *Sapp v. Kimbrell*, 623 F.3d 813, 822–23 (9th Cir. 2010)

13   (exhaustion requirement satisfied when prisoner demonstrates that grievance process was

14   unavailable to him through no fault of his own); *Nunez v. Duncan*, 591 F.3d 1217, 1224-25 (9th

15   Cir. 2010) (same).

16         Here, Defendant has pointed to a generally available administrative remedy that Plaintiff

17   failed to exhaust as to the Gabapentin Claims.  Specifically, Plaintiff failed to file a 602 appeal

18   that challenged either Defendant Gamboa's or Defendant Phan's alleged denial of Gabapentin.

19   Mot. at 12.  Plaintiff does not contest the existence or general availability of this administrative

20   remedy.  Instead, Plaintiff argues that the PLRA exhaustion requirement should be excused in the

21   instant case because Plaintiff was mentally incapable of satisfying the PLRA exhaustion

22   requirement.  Opp'n at 10–11 ("Here, Plaintiff was not capable of effectively using the California

23   Department of Corrections and Rehabilitation (C.D.C.R.) administrative remedies because he is

24   mentally incapacitated.").

25         In order to be excused from satisfying the PLRA exhaustion requirement as to the 602

26   appeal process, Plaintiff must show that the 602 appeal process was "effectively unavailable to"

27                                                      9

28   Case No. 17-CV-04375-LHK
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
     JUDGMENT

United States District Court
Northern District of California

1   Plaintiff.  *Albino*, 747 F.3d at 1172.  The United States Supreme Court recently admonished that

2   "mandatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes,

3   foreclosing judicial discretion."  *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016).  Accordingly, to

4   determine whether PLRA exhaustion is not required, courts may look only to the PLRA's "own,

5   textual exception to mandatory exhaustion."  *Id.* at 1858.  "An inmate, that is, must exhaust

6   available remedies, but need not exhaust unavailable ones."  *Id.*

7         The United States Supreme Court provided three illustrative examples of when an

8   administrative remedy is unavailable and therefore need not be exhausted by a plaintiff.

9   Specifically, an administrative remedy is unavailable: (1) when it operates "as a simple dead end,"

10  (2) when an administrative remedy is "so opaque that it becomes, practically speaking, incapable

11  of use," and (3) when "prison administrators thwart inmates from taking advantage of a grievance

12  process."  *Id.* at 1859–60.  Plaintiff does not argue that any of these three forms of unavailability

13  apply here.  Moreover, the United States Supreme Court did not list a plaintiff's mental capacity

14  as a possible ground for unavailability of an administrative remedy such that PLRA exhaustion

15  may be excused.  Indeed, the United States Supreme Court's examples focused on the

16  characteristics of administrative remedies, not on the characteristics of potential plaintiffs.  *Id.* at

17  1859–60 (outlining examples).  Most courts that have addressed the question have outright

18  rejected the existence of a mental-capacity exception to the PLRA exhaustion requirement.  *See,*

19  *e.g.*, *Johnson v. Dist. of Columbia*, 869 F. Supp. 2d 34, 39 (D.D.C. 2012) (explaining that "the

20  bulk of authority [] has consistently held that individuals with disabilities or mental illness must

21  nonetheless comply with the PLRA's exhaustion requirements," and outlining case law); *see also,*

22  *e.g.*, *Williams v. White*, 724 F. App'x 380, 383 (6th Cir. 2018) (explaining that "there is no mental-

23  capacity exception to the PLRA" exhaustion requirement).

24        Even assuming the existence of a mental-capacity exception to the PLRA exhaustion

25  requirement, Plaintiff would not be entitled to such an exception here.  According to the United

26  States Supreme Court, the key question is whether the relevant "grievance procedures [] are

27                                          10

28  Case No. 17-CV-04375-LHK
    ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
    JUDGMENT

'capable of use' to obtain 'some relief for the action complained of.'" *Ross*, 136 S. Ct. at 1859 (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)).  There is no genuine issue of material fact that the 602 appeal process was "capable of use" by Plaintiff to obtain relief for the alleged denial of Gabapentin.  In fact, not only was the 602 appeal process "capable of use" by Plaintiff—the 602 appeal process *was* successfully used by Plaintiff to raise multiple medical claims.

The record demonstrates that Plaintiff successfully completed the 602 Appeal process with respect to numerous other claims that arose from alleged denial of medical treatments, several of which are at issue in the instant case.  Plaintiff conclusorily states that "a review of the hundreds of pages of Plaintiff's 602 appeals filed over a four-year period suggests that Plaintiff was incapable of effectively pursuing his administrative remedies."  Opp'n at 11.  However, Plaintiff's assertion is belied by the record, in which Plaintiff proceeded through the full 602 Appeal process and successfully exhausted administrative remedies with respect to other medical issues, namely Plaintiff's request for a TENS unit, daily showers, single cell accommodations, an increase in pain medication, and transfer to a hospital.  *See* ECF No. 67-6 at A-1, A-2 (final decision on 602 Appeal in which "[t]his decision exhausts [Plaintiff's] administrative remedies" as to Plaintiff's request for a TENS unit, daily showers, single cell accommodations, an increase in pain medication, and transfer to a hospital).  Plaintiff cites no authority for the proposition that the 602 appeal process could be "capable of use" by Plaintiff as to some medical claims but not as to the alleged denial of Gabapentin.

Nor does the fact that the Court appointed a guardian ad litem on November 14, 2018 for the purposes of federal litigation provide evidence that the 602 appeal process was unavailable to Plaintiff.  As an initial matter, the November 14, 2018 guardian ad litem appointment came years after the alleged Gabapentin denials, which allegedly occurred in 2013 and 2016.  "[A]n individual's competency is not fixed, but may vary over time." *Johnson*, 869 F. Supp. 2d at 39.  Moreover, California regulations dictate that "[h]ealth care staff shall ensure effective communication is achieved and documented when there is an exchange of health care information

11

United States District Court
Northern District of California

1    involving patients with a hearing, vision, and/or speech impairment; developmental disability

2    and/or learning disability; Test of Adult Basic Education (TABE) reading score of 4.0 or less,

3    which includes zero or no TABE score; and/or Limited English Proficiency, and in health care

4    grievance communications with such patients."  Cal. Code Regs. tit. 15, § 3999.226.  Here, in

5    accordance with these regulations, the record shows that Defendant Gamboa interviewed Plaintiff

6    in connection with the 602 Appeal.  ECF No. 69-6 at A-11, A-13.  In the course of the interview,

7    Plaintiff "convinced the interviewer that [Plaintiff] understood the issues of the appeal and the

8    purpose for the interview."  *Id.*

9            Accordingly, because there is no genuine issue of material fact that Plaintiff failed to

10   exhaust an administrative remedy that was "available" to him under the PLRA, the Court

11   GRANTS Defendants' motion for summary judgment as to the Gabapentin Claims.  The Court

12   need not consider Defendants' alternative argument that there is no genuine issue of material fact

13   that Plaintiff is entitled to relief as to the Gabapentin claims.  The Court now proceeds to consider

14   Defendants' argument that Plaintiff's 602 Appeal Claims are barred by the statute of limitations.

### B.  The 602 Appeal Claims Are Barred in Part by Statute of Limitations

16           Defendants argue that Plaintiff's 602 Appeal Claims are barred by the statute of

17   limitations.  Alternatively, Defendants argue that there is no genuine issue of material fact that

18   Defendants Gamboa, Bright, Dunlap, and Lewis were deliberately indifferent to Plaintiff's

19   medical condition in connection with the 602 Appeal.  The Court first considers whether

20   Plaintiff's 602 Appeal Claims are barred by the statute of limitations.  The Court then proceeds to

21   consider whether there is a genuine issue of material fact as to deliberate indifference in

22   connection with the 602 Appeal.

### 1.  Applicable Statute of Limitations

24           The Court looks to California state law to determine the length of the statute of limitations

25   for claims brought pursuant to 42 U.S.C. § 1983.  *See Wallace v. Kato*, 549 U.S. 384, 387 (2007)

26   ("Section 1983 provides a federal cause of action, but in several respects relevant here federal law

27

28   Case No. 17-CV-04375-LHK
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
     JUDGMENT

United States District Court
Northern District of California

United States District Court
Northern District of California

looks to the law of the State in which the cause of action arose.  This is so for the length of the statute of limitations:  It is that which the State provides for personal-injury torts.").  Here, the parties agree that the applicable statute of limitations imposed by California law is four years.  Mot. at 9 ("[Plaintiff] had four years to bring his claims against Defendants."); Opp'n at 5 (explaining that "Plaintiff does not dispute that his 42 U.S.C. [§] 1983 claims are governed by a . . . 4-year statute of limitations").

The parties are correct.  The statute of limitations for personal injury actions in California is two years.  Cal. Civ. Proc. Code § 335.1 ("Within two years: An action for assault, battery, or injury to, or for the death of, an individual caused by the wrongful act or neglect of another."); *see also Canatella v. Van De Kamp*, 486 F.3d 1128, 1132–33 (9th Cir. 2007) (explaining that under California law, "personal injury actions must be brought within two years after the cause of action arose").  The Court must also apply California state law tolling rules.  *See id.* at 1132 (explaining for lawsuits under 42 U.S.C. § 1983, federal courts apply "[t]he forum state's law regarding tolling, including equitable tolling, except to the extent any of these laws is inconsistent with federal law" (internal quotation marks omitted)).  California law provides for the automatic tolling of a statute of limitations for up to two years when the plaintiff is imprisoned for a term less than for life and the cause of action accrues during imprisonment.  Cal. Code Civ. Proc. § 352.1 (explaining that if a plaintiff is "imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term less than for life, the time of that disability is not a part of the time limited for the commencement of the action, not to exceed two years").  Plaintiff is subject to this tolling provision, which renders the combined statute of limitations four years.  Mot. at 9 ("Here, [Plaintiff's] prison sentence is 80 years and he is eligible for parole in 2024."); Opp'n at 5 (explaining that statute of limitations as to Plaintiff "is tolled for another two years based on Plaintiff's disability of imprisonment for a term less than for life").

Plaintiff's 602 Appeal was denied on May 16, 2014.  ECF No. 69-6 at A-3.  Claim accrual rules in 42 U.S.C. § 1983 cases are governed by federal law, not state law.  *Maldonado v. Harris*,

Case No. 17-CV-04375-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

370 F.3d 945, 955 (9th Cir. 2004) ("Federal law determines when a civil rights claim accrues."). "Under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999). Hence, the four-year statute of limitations related to Plaintiff's 602 Appeal Claims expired on May 16, 2018, over a year before Plaintiff filed the SAC on June 21, 2019. SAC at 10.

Plaintiff concedes the foregoing. Opp'n at 5 ("Plaintiff does not dispute that his 42 U.S.C. [§] 1983 claims are governed by a two-year statute of limitations, which is tolled for another two years . . . ."). However, according to Plaintiff, Plaintiff's deliberate indifference claims as to the 602 Appeal are nonetheless timely for two reasons. First, the 602 Appeal Claims relate back to Plaintiff's original complaint for the purposes of the statute of limitations. *Id.* at 5. Second, the statute of limitations for the 602 Appeal Claims should be equitably tolled. *Id.* at 7. The Court considers these arguments in turn.

### a. Relation-Back Doctrine Applies in Part

First, Plaintiff argues that the 602 Appeal Claims are timely because "Plaintiff's Second Amended Complaint relates back to Plaintiff's Complaint filed on August 2, 2017." Opp'n at 5. If Plaintiff is correct, then Plaintiff's 602 Appeal Claims are timely because the original complaint was timely. However, Plaintiff's relation-back argument fails.

Here, Plaintiff filed the original complaint in the instant case pro se on August 2, 2017. ECF No. 1. The original complaint named all of the current Defendants, as well as numerous other defendants who have since been dismissed. ECF No. 1-1. In the original complaint, Plaintiff alleged a claim for deliberate indifference under 42 U.S.C. § 1983 pursuant to numerous theories, including many that have been abandoned. *Id.* Plaintiff then filed the FAC on January 16, 2019, which dropped all defendants except Defendants Gamboa and Phan. ECF No. 23. Plaintiff again alleged a claim for deliberate indifference to medical condition under 42 U.S.C. § 1983, but the sole theory Plaintiff asserted was that Defendants Gamboa and Phan withheld Gabapentin from Plaintiff. *Id.* at 3. Finally, on June 25, 2019, Plaintiff filed the SAC, the

Case No. 17-CV-04375-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1    operative pleading.  ECF No. 45.  With the SAC, Plaintiff named Defendants Bright, Dunlap, and

2    Lewis once more.  *Id.* at 6–8.  Plaintiff also added the instant 602 Appeal Claims, which Plaintiff

3    alleges against Defendants Bright, Dunlap, Gamboa, and Lewis.  *Id.* at 5.

4        "Whether an amendment relates back in an action under 42 U.S.C. § 1983 requires a court

5    to 'consider both federal and state law and employ whichever affords the more permissive relation

6    back standard.'"  *Klamut v. Cal. Highway Patrol*, No. 15-CV-02132-MEJ, 2015 WL 9024479, at

7    *4 (N.D. Cal. Dec. 16, 2015) (quoting *Butler v. Nat'l Cmty. Renaissance of Cal.*, 766 F.3d 1191,

8    1198, 1201 (9th Cir. 2014)).

9        Plaintiff contends that both California and federal relation-back doctrines permit Plaintiff's

10    602 Appeal Claims to relate back to the original complaint.  Opp'n at 6.  Accordingly, the Court

11    considers both doctrines in turn.

12                    **i.   California Relation-Back Doctrine Applies in Part**

13        The Court begins with the California relation-back doctrine.  Under California law, "[a]s a

14    general rule, 'an amended complaint that adds a new defendant does not relate back to the date of

15    filing the original complaint and the statute of limitations is applied as of the date the amended

16    complaint is filed, not the date the original complaint is filed.'"  *Hawkins v. Pac. Coast Bldg.*

17    *Prods., Inc.*, 124 Cal. App. 4th 1497, 1503 (2004) (quoting *Woo v. Superior Court*, 75 Cal. App.

18    4th 169, 176 (1999)).  An exception to the foregoing rule exists "where an amendment does not

19    add a 'new' defendant, but simply corrects a misnomer by which an 'old' defendant was sued."

20    *Id.*

21        Here, Plaintiff's original complaint named Defendants Bright, Dunlap, and Lewis.  ECF

22    No. 1-1.  However, the FAC did not name Defendants Bright, Dunlap, and Lewis.  ECF No. 23.

23    Under California law, Plaintiff thus "effectively dismissed" Defendants Bright, Dunlap, and

24    Lewis.  *See Fireman's Fund Ins. Co. v. Sparks Construction, Inc.*, 114 Cal. App. 4th 1135, 1144

25    (2004) ("Hence, as we held in part III.A, *ante*, by filing the first amended complaint, [the plaintiff]

26    effectively dismissed all Doe defendants.  Filing Doe amendments when the operative complaint

27

28    Case No. 17-CV-04375-LHK
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
     JUDGMENT

United States District Court
Northern District of California

contained no Doe allegations did not comply with Code of Civil Procedure section 474."). When Plaintiff added Defendants Bright, Dunlap, and Lewis in the SAC, the "general rule" under California law that an amended complaint that adds a new defendant does not relate back to the original complaint therefore applies. *See Hawkins*, 124 Cal. App. 4th at 1503 (explaining general rule). The addition of Defendants Bright, Dunlap, and Lewis therefore relates back to Plaintiff's original complaint only if the exception to the foregoing rule applies, *i.e.* did their addition correct "a misnomer by which an 'old' defendant was sued." *Id.*

The addition of Defendants Bright, Dunlap, and Lewis cannot reasonably be construed as an attempt to "simply correct[] a misnomer by which an 'old' defendant was sued," nor does Plaintiff provide any argument to that effect. *Id.* In the SAC, Plaintiff simply realleged the deliberate indifference claim against Defendants Bright, Dunlap, and Lewis, using the same names that Plaintiff had previously used in the original complaint. *See* ECF No. 1-1 at 3 (alleging claims against Defendants Bright, Dunlap, and Lewis). Hence, under California law, the addition of Defendants Bright, Dunlap, and Lewis in the SAC cannot relate back to the original complaint. *See, e.g.*, *Jackson v. Med. Bd. of Cal.*, No. 2:07-CV-02188-SVW-RZ, 2012 WL 13019955, at *8 (C.D. Cal. Apr. 19, 2012) (holding that California law did not permit relation-back to original complaint when FAC dropped defendants and SAC attempted to re-name them because plaintiff's actions could not "reasonably be construed as an attempt to correct a 'misnomer or defect in the description or characterization of the parties'").

By contrast to Defendants Bright, Dunlap, and Lewis, Defendant Gamboa was in fact consistently named as a defendant across all three versions of Plaintiff's complaint. As to Defendant Gamboa, then, the question is whether California's relation-back doctrine permits Plaintiff to timely allege the 602 Appeal Claim, which was alleged against Defendant Gamboa in the original complaint, dropped from the FAC, and then re-alleged in the SAC. *See Montes v. Rafalowski*, No. C-09-00976 RMW, 2012 WL 1595683, at *2 (N.D. Cal. May 4, 2012) ("[S]ubstituting a defendant is distinguishable from adding new claims against existing

16

defendants.").

With respect to amended complaints that allege new causes of action against existing defendants, California law permits relation back when the amended complaint "is based on the same general set of facts as the original complaint, seeks relief for the same injuries, and refers to the same incident." *Carrier Corp. v. Detrex Corp.*, 4 Cal. App. 4th 1522, 1530 (1992); *see also Norgart v. Upjohn Co.* 21 Cal. 4th 383, 408–409 (1999) ("The relation-back doctrine requires that the amended complaint must (1) rest on the same general set of facts, (2) involve the same injury, and (3) refer to the same instrumentality, as the original one."). Plaintiff's 602 Appeal Claim against Defendant Gamboa clearly satisfies this standard because Plaintiff's original complaint contained this precise claim against Defendant Gamboa. ECF No. 1-1 at 10 (outlining 602 Appeal and naming the involvement of "Dr[.] Lawrence Gamboa"). Defendants do not argue otherwise. Instead, Defendants assert that Plaintiff "abandoned his claims related to the denial of his 602 Appeal" when Plaintiff omitted them from the FAC. Mot. at 10.

Defendants' argument is not well-taken. In *Westlake Pointe Homeowners Ass'n v. Builders Sheet Metal, Inc.*, No. B147126, 2003 WL 1193790 (Cal. Ct. App. Mar. 17, 2003), the California Court of Appeal rejected the precise argument advanced by Defendants. In *Westlake Pointe Homeowners Ass'n*, the defendants argued that the plaintiff's decision to voluntarily dismiss a cause of action "'broke the relation-back chain,' and the 'revival' of that claim" in an amended complaint was therefore barred by the statute of limitations. *Id.* at *6. The California Court of Appeal held that the "argument that the prior voluntary dismissal without prejudice of the contract theory somehow breaks the relation back chain is not supported by any authority and would completely abrogate the theory underlying the relation back doctrine itself." *Id.* at *7. Accordingly, the California Court of Appeal reversed the dismissal of that claim on the basis of the statute of limitations. *Id.*

Defendants point to no authority in which a California state court held that the voluntary dismissal of a cause of action precluded the application of the relation-back doctrine.

17

Case No. 17-CV-04375-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

1    Accordingly, the Court concludes that Plaintiff's 602 Appeal Claim against Defendant Gamboa

2    relates back to the original complaint and is therefore timely.  Thus, the Court DENIES

3    Defendants' motion for summary judgment as to Plaintiff's 602 Appeal Claim against Defendant

4    Gamboa on the basis of the statute of limitations.  The Court now proceeds to consider whether

5    Plaintiff's 602 Appeal Claims against Defendants Bright, Dunlap, and Lewis relate back to

6    Plaintiff's original complaint under the federal relation-back doctrine.

7                    **ii.  Federal Relation-Back Doctrine Does Not Apply**

8         Plaintiff asserts that Federal Rule of Civil Procedure 15(c)(1)(C) permits Plaintiff's 602

9    Appeal Claims against Defendants Bright, Dunlap, and Lewis to relate back to the original

10   complaint.  Opp'n at 6 ("Plaintiff satisfies the standard under Federal Rule of Civil Procedure

11   15(c)(1)(C).").  The Court disagrees.

12        Federal Rule of Civil Procedure 15(c)(1)(C) dictates that "[a]n amendment to a pleading

13   relates back to the date of the original pleading when: . . . the amendment changes the party or the

14   naming of the party against whom a claim is asserted," so long as "the party to be brought in by

15   amendment: (i) received such notice of the action that it will not be prejudiced in defending on the

16   merits; and (ii) knew or should have known that the action would have been brought against it, but

17   for a mistake concerning the proper party's identity."  Fed. R. Civ. P. 15(c)(1)(C).  The Ninth

18   Circuit has further clarified that under Federal Rule of Civil Procedure 15(c)(1)(C), an amended

19   complaint relates back to an original complaint only if the following conditions are met: "'(1) the

20   basic claim must have arisen out of the conduct set forth in the original pleading; (2) the party to

21   be brought in must have received such notice that it will not be prejudiced in maintaining its

22   defense; (3) that party must or should have known that, but for a mistake concerning identity, the

23   action would have been brought against it.'" *Butler v. Nat'l Cmty. Renaissance of Cal.*, 766 F.3d

24   1191, 1202 (9th Cir. 2014) (quoting *Schiavone v. Fortune*, 477 U.S. 21, 29 (1986)).

25        Rule 15(c)(1)(C) does not permit Plaintiff to relate the claims in the SAC against

26   Defendants Bright, Dunlap, and Lewis back to the original complaint.  As an initial matter, the

27

18

28   Case No. 17-CV-04375-LHK
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
     JUDGMENT

1   reintroduction of Defendants Bright, Dunlap, and Lewis in the SAC did not "change[] the party or

2   the naming of the party against whom a claim is asserted" as to the original complaint.  Fed. R.

3   Civ. P. 15(c)(1)(C).  As discussed, the original complaint already named Defendants Bright,

4   Dunlap, and Lewis as defendants.

5          Further, the record is devoid of any evidence, and Plaintiff makes no argument, that the

6   omission and reintroduction of Defendants Bright, Dunlap, and Lewis resulted from "a mistake

7   concerning the proper party's identity."  Fed. R. Civ. P. 15(c)(1)(C).  Indeed, the United States

8   Supreme Court has held that "making a deliberate choice to sue one party instead of another while

9   fully understanding the factual and legal differences between the two parties is the antithesis of

10  making a mistake concerning the proper party's identity."  *Krupski v. Costa Crociere S.P.A.*, 560

11  U.S. 538, 549 (2010).  Federal courts thus routinely reject the application of Rule 15(c)(1)(C) as to

12  defendants that plaintiffs dismiss and subsequently seek to reintroduce.  *See, e.g.*, *Singh v. Life Ins.*

13  *of Am.*, No. C 08-1353, 2010 WL 3515755, at *6 (N.D. Cal. Sept. 8, 2010) ("In this case, Plaintiff

14  was aware of Sky Chefs' identity and its relation to his claims when he included Sky Chefs in his

15  original and first amended complaints.  Plaintiff's mistake, therefore, is not one that Rule 15(c)(1)

16  was intended to rectify."); *Nite & Day Power Techs. v. Corporate Capital Resources, Inc.*, No.

17  CV-89-20298, 1995 WL 7942, at *5 (N.D. Cal. Jan. 5, 1995) ("Because defendants were named in

18  the original complaint and in the non-fraud causes of action in the first amended complaint,

19  plaintiffs clearly knew of their existence.  Their omission may have been a tactical choice.").

20         Here, based on the allegations in the original complaint, Plaintiff clearly knew of the

21  existence of Defendants Bright, Dunlap, and Lewis, as well as their involvement in the 602

22  Appeal.  Hence, there is no evidence of a mistake concerning their identity.  For this reason, Rule

23  15(c)(1)(C) cannot permit Plaintiff to relate the claims against Defendants Bright, Dunlap, and

24  Lewis back to the original complaint.  The Court now considers Plaintiff's argument that equitable

25  tolling nonetheless renders Plaintiff's 602 Appeal Claims against Defendants Bright, Dunlap, and

26  Lewis timely.

27

28

Case No. 17-CV-04375-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

### b. Equitable Tolling Does Not Apply

As noted, in actions that allege claims under 42 U.S.C. § 1983, the Court applies the tolling rules of the forum state. Here, Plaintiff argues that California's doctrine of equitable tolling renders Plaintiff's claims against Defendants Bright, Dunlap, and Lewis timely. Opp'n at 7–8. The Court disagrees.

Equitable tolling is "a judicially created, nonstatutory doctrine" available in certain circumstances under California law. *McDonald v. Antelope Valley Comm. College Dist.*, 45 Cal. 4th 88, 99 (2008). "Broadly speaking, the doctrine applies '[w]hen an injured person has several legal remedies and, reasonably and in good faith, pursues one.'" *Id.* at 100 (quoting *Elkins v. Derby*, 12 Cal.3d 410, 414 (1974)) (alteration in original). "Thus, it may apply where one action stands to lessen the harm that is the subject of a potential second action; where administrative remedies must be exhausted before a second action can proceed; or where a first action, embarked upon in good faith, is found to be defective for some reason." *Id.*

Equitable tolling under California law does not apply in the instant case. Here, Plaintiff does not seek to equitably toll the statute of limitations based on the existence of an action in a separate forum. Instead, Plaintiff seeks to invoke equitable tolling based solely on Plaintiff's own conduct in the instant case. California courts have consistently held that equitable tolling has no application when a party "pursue[s] successive claims in the *same* forum." *Martell v. Antelope Valley Hospital Med. Center*, 67 Cal. App. 4th 978, 985 (1998).

For instance, the California Court of Appeal has rejected the proposition that equitable tolling may apply based on the fact that a plaintiff voluntarily dismissed a claim and then later sought to reallege the same claim within the same forum. *See Thomas v. Gilliland*, 95 Cal. App. 4th 427, 434 (2002) (rejecting the application of equitable tolling because plaintiff "did not have any alternate remedies" and "[h]is claim was the singular pursuit of a medical malpractice action"). Other California cases consistently decline to apply equitable tolling based only on a plaintiff's conduct within a single forum. *See Jones v. Cnty. of El Dorado*, No. C057434, 2008 WL 3878345, at *2 (Cal. App. Ct. Aug. 22, 2008) ("[Equitable tolling] has no application here

20

because this case involves only one legal remedy—[the plaintiff's] lawsuit in state court."); *Willer v. State*, No. B174523, 2005 WL 647649, at *5 (Cal. App. Ct. Mar. 22, 2005) ("Contrary to plaintiff's claim, he is not entitled to invoke the doctrine of equitable tolling, which is procedurally inapposite for the reason that both his state claims and federal claims were pursued in the same action (and at the same time).").  Plaintiff cites no authority to the contrary.

Here, Plaintiff alleged, and voluntarily dismissed, the 602 Appeal Claims against Defendants Bright, Dunlap, and Lewis in the process of litigating the instant case.  To the extent Plaintiff seeks to re-assert those claims, Plaintiff "pursue[s] successive claims in the *same* forum, and therefore equitable tolling [does] not apply." *Martell*, 67 Cal. App. 4th at 985.  Thus, equitable tolling cannot render Plaintiff's claims against Defendants Bright, Dunlap, and Lewis timely.

In sum, neither relation-back doctrine nor equitable tolling renders Plaintiff's claims against Defendants Bright, Dunlap, and Lewis timely.  The Court therefore GRANTS Defendants' motion for summary judgment as to Defendants Bright, Dunlap, and Lewis.  Finally, the Court considers Defendants' argument that there is no genuine issue of material fact as to whether Defendant Gamboa was deliberately indifferent with respect to the 602 Appeal.

### C. There Is A Genuine Issue of Material Fact As To Whether Defendant Gamboa Was Deliberately Indifferent with Respect to the 602 Appeal

Plaintiff's 602 Appeal Claim against Defendant Gamboa is not barred by the statute of limitations.  Pursuant to this claim, Plaintiff asserts that Defendant Gamboa's denial of Plaintiff's request for a TENS unit, daily showers, and single cell accommodations in the 602 Appeal exhibited deliberate indifference and caused Plaintiff "severe, debilitating pain."  SAC ¶¶ 39, 40. The Court must consider Defendants' argument that there is no genuine issue of material fact that Defendant Gamboa was deliberately indifferent to Plaintiff's medical condition with respect to the 602 Appeal.

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97,

104 (1976).  A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need.  *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds*, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).  A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain."  *Id.* (citing *Estelle*, 429 U.S. at 104).  A prison official is deliberately indifferent if he knows a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it.  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  Here, Defendants "concede that a question of fact exists as to whether [Plaintiff's] back pain constitutes a 'serious medical need.'"  Mot. at 8.  Accordingly, the sole question the Court must resolve is whether there is any genuine issue of material fact as to the second element of deliberate indifference.

To satisfy the second element of deliberate indifference, a prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but "must also draw the inference."  *Farmer*, 511 U.S. at 837.  Consequently, in order for deliberate indifference to be established, a plaintiff must show that the defendant purposefully acted or failed to act, and that harm resulted.  *See McGuckin*, 974 F.2d at 1060.  A claim of medical malpractice or negligence is insufficient to establish a violation of the Eighth Amendment.  *Id.* at 1059.  Nor do disagreements in medical opinion suffice to show deliberate indifference.  *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004).  "Rather, to prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment was 'medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to [the prisoner's] health.'"  *Id.* (citing *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (alteration in original)).  Hence, the second element of deliberate indifference itself has two elements in this context: (1) whether the chosen course of treatment for Plaintiff was medically unacceptable under the circumstances, and (2) whether that

22

1    chosen course of treatment was chosen in conscious disregard of an excessive risk to Plaintiff's

2    health.

3          The Court begins with a background of the treatment received by Plaintiff as well as the

4    conduct undertaken by Defendant Gamboa in connection with the 602 Appeal.  Based on

5    Plaintiff's medical notes, in December 2007, Plaintiff suffered from severe pain, and an

6    unspecified SVSP doctor indicated in Plaintiff's medical notes that "TENS unit [was] helping"

7    that pain.  ECF No. 70-26.  Later, in September 2008, an SVSP doctor named Dr. Marie Scherer

8    indicated that "[p]atient was recently seen by physical therapist and was recommended to continue

9    Tens-Unit" as a treatment for pain and stiffness.  ECF No. 70-22 at 1.  The physical therapist

10   apparently also recommended a "chrono for daily showers."  *Id.*  Later, in October 2008, Dr.

11   Scherer herself noted that "tens unit has been quite effective" for Plaintiff's "poor significant

12   cervical spasm."  ECF No. 70-6.  The record is unclear as to how long Plaintiff received treatment

13   with the TENS unit, though the record indicates that Plaintiff received treatment with the TENS

14   unit as late as October 18, 2013.  ECF No. 70-42.

15         As of September 4, 2013, Plaintiff was prescribed morphine for pain treatment.  ECF No.

16   69-7 at B-28.  On September 24, 2013, SVSP's Pain Management Commission decided to wean

17   Plaintiff off of morphine because it concluded that Plaintiff's condition was "mild."  *Id.* at B-14.

18   Accordingly, Plaintiff's morphine prescription was tapered down until Plaintiff received a final

19   dose of morphine on October 20, 2013.  *Id.*  During this taper period, Plaintiff reported intense

20   pain, such that Plaintiff was "not able to eat, not able to walk, not able to shower . . . [and] not able

21   to sleep."  *Id.*

22         In approximately September 2013, a psychiatric medical provider also prescribed Plaintiff

23   Trazadone, "which is an antidepressant."  Dunlap Decl. ¶ 8; ECF No. 69-7 at B-40.  According to

24   Defendant Dunlap, the Chief Medical Executive of SVSP and a doctor of osteopathy, Trazadone

25   often has an "additive benefit" to pain-relieving medications in individuals like Plaintiff.  Dunlap

26   Decl. ¶ 8.

27

28   Case No. 17-CV-04375-LHK
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
     JUDGMENT

United States District Court
Northern District of California

On October 8, 2013, Plaintiff filed the 602 Appeal.  ECF No. 69-6 at A-11.  In the 602 Appeal, Plaintiff declared that Plaintiff had "pain level 10," that Plaintiff suffered from "severe limitation of function to perform daily function [*sic*]," and that "I need my TENS Unit pads A.S.A.P. please."  *Id.* at A-6.  Of relevance here, Plaintiff sought treatment with a TENS unit, daily showers, and single cell accommodations.  *Id.*

On October 22, 2013, after Plaintiff had been weaned off of morphine, Plaintiff met with Defendant Gamboa.  ECF No. 69-7 at B-54.  At that meeting, Plaintiff "threatened to do man down if narcotic [*i.e.*, morphine] not re-prescribed."  *Id.*  Defendant Gamboa offered Plaintiff nonsteroidal anti-inflammatory drugs like Tylenol for the pain, but Plaintiff declined.  *Id.*  Based on Plaintiff's conduct, Defendant Gamboa also referred Plaintiff to "mental health for drug (narcotics) seeking behavior."  *Id.* at B-25.

On November 20, 2013, Defendant Gamboa interviewed Plaintiff in connection with Plaintiff's October 8, 2013 602 Appeal.  *Id.* at A-11.  Defendant Gamboa then denied the 602 Appeal as to Plaintiff's request for treatment with a TENS unit, daily showers, and single cell accommodations.[4]  *Id.*  Defendant Gamboa provided almost no explanation for the denial.  As to the pain medications, Defendant Gamboa stated, "you received your last dose on 10/20/2013.  You were weaned off pain medication.  Your request for narcotics was denied."  *Id.*  As to the TENS unit and daily showers, Defendant Gamboa merely stated that "the TENs unit and shower chrono was [*sic*] denied."  *Id.*  Defendant Gamboa said nothing about the denial of single cell accommodations.

On December 30, 2013, a different SVSP medical provider prescribed acetaminophen with codeine to treat Plaintiff's pain.  ECF No. 69-7 at B-52.  Later, on April 15, 2014, an unnamed SVSP medical provider prescribed methadone to Plaintiff.  ECF No. 69-6 at A-1.

On February 7, 2014, Defendant Dunlap, the Chief Medical Executive of SVSP, denied

---

[4] Defendant Bright, the Chief Physician and Surgeon of SVSP, also signed the denial of the 602 Appeal at the initial level.  ECF No. 69-6 at A-12.

24

United States District Court
Northern District of California

Plaintiff's second-level appeals. ECF No. 69-6 at A-13, A-14. On May 16, 2014, Defendant Lewis, the Deputy Director of Policy and Risk Management Services at SVSP, denied Plaintiff's third-level appeal, which resulted in a termination of the 602 Appeal process and "exhaust[ion] [of] administrative remedies." *Id.* at A-1, A-2. Defendants Dunlap and Lewis also provided very little in the way of explanation for why the TENS unit and daily showers were denied, but Defendant Lewis explained to Plaintiff that SVSP medical staff lack the authority to provide permanent single cell accommodations to Plaintiff. *Id.*

The Court must now determine whether there is a genuine issue of material fact as to Defendant Gamboa's conduct with respect to (1) whether the chosen course of treatment for Plaintiff was medically unacceptable under the circumstances, and (2) whether that chosen course of treatment was chosen in conscious disregard of an excessive risk to Plaintiff's health. *Toguchi*, 391 F.3d at 1058 (9th Cir. 2004).

The Court's analysis begins with the first element. In order to show deliberate indifference, Plaintiff must produce a genuine issue of material fact "that the chosen course of treatment was 'medically unacceptable under the circumstances.'" *Id.* Thus, the Court must look to the "chosen course of treatment" for Plaintiff's chronic pain at the time Defendant Gamboa denied the TENS unit, daily showers, and single cell accommodations. As discussed, as of December 30, 2013, Plaintiff was prescribed acetaminophen with codeine to treat the chronic pain. ECF No. 69-7 at B-52. Later, on April 15, 2014, Plaintiff was also prescribed methadone for the same purpose. ECF No. 69-6 at A-1. However, both of these medications were prescribed by medical providers other than Defendant Gamboa after Defendant Gamboa denied the 602 Appeal on November 20, 2013. Although Defendant Gamboa had previously offered Plaintiff nonsteroidal anti-inflammatory drugs like Tylenol for pain on October 22, 2013, Plaintiff had declined. ECF No. 69-7 at B-54.

At most, the record suggests that Plaintiff was prescribed Trazadone as of the time Defendant Gamboa denied the 602 Appeal. ECF No. 69-7 at B-40. However, the record only

Case No. 17-CV-04375-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1    indicates that Trazadone "often has an additive benefit" to other pain relief medications.  Dunlap

2    Decl. ¶ 8.  The record contains no indication that Trazadone is independently effective for pain

3    relief when no such pain relief medications are prescribed.  On a motion for summary judgment,

4    the Court must take the evidence and all reasonable inferences in the light most favorable to

5    Plaintiff, who is the non-moving party.  *See, e.g.*, *Tauscher v. Phoenix Bd. of Realtors, Inc.*, 931

6    F.3d 959, 962 (9th Cir. 2019) ("Summary judgment is appropriate only if, taking the evidence and

7    all reasonable inferences in the light most favorable to the non-moving party, there are no genuine

8    issues of material fact, and the movant is entitled to judgment as a matter of law.").  Here, because

9    Plaintiff's morphine prescription had been eliminated, and no other pain medication had yet been

10   prescribed, Plaintiff was not provided with any pain treatment for over a month when Defendant

11   Gamboa denied the 602 Appeal.  This is so notwithstanding the fact that Plaintiff had reported

12   intense pain to Defendant Gamboa, such that Plaintiff was "not able to eat, not able to walk, not

13   able to shower . . . [and] not able to sleep."  ECF No. 69-7 at B-14.

14          The Court also construes Plaintiff's medical notes in the light most favorable to Plaintiff.

15   These notes, dated from 2007 and 2008, indicated that the "TENS unit [was] helping" Plaintiff's

16   pain and that the TENS unit was "quite effective" for Plaintiff's "poor significant cervical spasm."

17   ECF No. 70-6; ECF No. 70-26.  It is not clear whether Plaintiff's "poor significant cervical

18   spasm" was linked to Plaintiff's pain or, indeed, whether Plaintiff still suffered from "poor

19   significant cervical spasm" at the time Defendant Gamboa denied Plaintiff's request for the TENS

20   unit.  However, in the absence of evidence to the contrary, the Court assumes for the purposes of

21   the instant motion that the medical notes produced by Plaintiff indicate that the TENS unit would

22   have been "quite effective" for the treatment of Plaintiff's pain at the time Defendant Gamboa

23   denied the 602 Appeal.  Moreover, although only the physical therapist explicitly recommended

24   that Plaintiff continue to use the TENS unit, the Court construes both Dr. Scherer's and the

25   unnamed SVSP physician's notes about the TENS unit's effectiveness to be tantamount to a

26   recommendation that Plaintiff continue to use the TENS unit.  ECF No. 70-6; ECF No. 70-22 at 1;

27

28   Case No. 17-CV-04375-LHK
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
     JUDGMENT

26

1    ECF No. 70-26.  Hence, in the light most favorable to Plaintiff, the record shows that Defendant

2    Gamboa denied the use of the TENS unit notwithstanding its effectiveness for Plaintiff, the

3    recommendations of two doctors and a physical therapist, and the absence of an alternative pain

4    treatment until over a month later.

5         The Ninth Circuit has said that the fact that prison officials ignored "the recommendations

6    of specialists and treating physicians for reasons unrelated to [a plaintiff's] medical needs"

7    constitutes evidence that the chosen course of treatment was medically unacceptable under the

8    circumstances.  *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012), *overruled on other grounds*

9    *by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014).  *Snow* represents the central case for this

10   proposition.  Indeed, in *Snow*, the Ninth Circuit reversed a lower court that granted summary

11   judgment for defendants.  *Id.*  The defendants in *Snow* refused to authorize a double-hip

12   replacement surgery, even though two orthopedic surgeons and the plaintiff's treating physician

13   recommended the surgery.  *Id.*  Evidence in the record suggested that the medication the plaintiff

14   was prescribed as an alternative to surgery was either ineffective or outright damaging to the

15   plaintiff.  *Id.* at 988 ("The record also shows that medications may have harmed [plaintiff's]

16   kidneys, and that the narcotics did not alleviate [plaintiff's] significant mobility issues.  In fact, Dr.

17   Rhodes stated in January 2007 that there 'is no option here other than surgery for relief.'").

18        Further, in *Snow* the defendants "gave no medical reason for the denials" of surgery, and

19   some evidence suggested the denials of surgery were due to the warden's dislike of death row

20   prisoners such as the plaintiff.  *Id.* at 986–87.  The Ninth Circuit thus held that a reasonable jury

21   could "conclude that the decision of the nontreating, nonspecialist physicians to repeatedly deny

22   the recommendations for surgery was medically unacceptable under all of the circumstances."  *Id.*

23   at 988; *see also Choquette v. DuVall*, 15-CV-05838-BHS-JRC, 2017 WL 8809629, at *4 (W.D.

24   Wash. Dec. 12, 2017), *report and recommendation adopted sub nom. Choquette v. Warner*, No.

25   C15-5838 BHS-JRC, 2018 WL 834240 (W.D. Wash. Feb. 13, 2018) (citing *Colwell v. Bannister*,

26   763 F.3d 1060, 1068 (9th Cir. 2014)) (denying summary judgment where all of plaintiff's

27

28   Case No. 17-CV-04375-LHK
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
     JUDGMENT

United States District Court
Northern District of California

1  treatment providers, who were neurologists, "agreed that gabapentin was the correct treatment

2  course" and where a defendant "conceded that there was not a medical reason to discontinue the

3  drug").

4      Although the instant case bears some resemblance to *Snow*, the instant case is in fact vastly

5  different from *Snow*.  In *Snow*, the defendants ignored the two orthopedic surgeons' and the

6  plaintiff's treating physician's contemporaneous recommendation for hip surgery to treat the

7  plaintiff's immobility and pain.  In fact, one orthopedic surgeon stated there "is no option here

8  other than surgery for relief."  681 F.3d at 988.  Moreover, at least one of the orthopedic surgeons

9  was deposed during the litigation and spoke to the plaintiff's need for surgery at the time the

10  requests were made.  *Id.* ("One of the specialists, Dr. Rhodes, testified at his deposition that

11  Snow's likelihood of success after a THA was very high, and that surgery would help improve

12  Snow's health and mobility.").

13      By contrast in the instant case, the unspecified SVSP doctor indicated that "TENS unit

14  [was] helping" in December 2007.  ECF No. 70-26.  A physical therapist recommended the

15  continuing the use of the TENS unit for pain and stiffness in approximately September 2008.  ECF

16  No. 70-22 at 1.  Dr. Scherer noted that the TENS unit "has been quite effective" for Plaintiff's

17  "poor significant cervical spasm" in October 2008.  ECF No. 70-6.  Five years later, on October 8,

18  2013, Plaintiff filed the 602 Appeal declaring that he "need[ed] [his] TENS Unit pads A.S.A.P."

19  ECF No. 69-6 at A-6.  Thus, unlike *Snow*, in which the surgery recommendations were

20  contemporaneous with the surgery denial, Defendant Gamboa's denial of the TENS unit came 5 to

21  6 years after the TENS unit recommendations.  As a result of the gap in time, the record is unclear

22  as to whether Plaintiff suffered from the same injuries in 2007–2008 as he did in 2013.  For

23  example, the latest TENS unit recommendation was for "significant cervical spasm" in October

24  2008, but there is no evidence in the record that the spasm persisted five years later in October

25  2013.  ECF No. 70-6.  In addition, the denial of surgery and the treatment provided in *Snow* "may

26  have harmed [the plaintiff's] kidneys and did not alleviate [the plaintiff's] significant mobility

27

28

28

1    issues."  681 F.3d at 988.  In the instant case, the denial of the TENS unit did not harm any of

2    Plaintiff's organs.

3         Furthermore, in *Snow*, an orthopedic surgeon found that no other option was medically

4    acceptable.  681 F.3d at 988 ("In fact, Dr. Rhodes stated in January 2007 that there 'is no option

5    here other than surgery for relief.'").  By contrast, the doctors and physical therapist from 2007

6    and 2008 in the instant case were not deposed and did not and could not opine on whether

7    Defendant Gamboa's treatment of Plaintiff in 2013 was medically unacceptable.  Needless to say,

8    the doctors and physical therapist from 2007 and 2008 were not Plaintiff's treating physician in

9    2013.  Moreover, there is no evidence that a physical therapist is in a superior position to

10   Defendant Gamboa, Plaintiff's treating physician and primary care provider, in determining

11   whether a TENS unit should be provided.  *See Schumaker v. Ahmed*, No. 17-CV-03567-EMC,

12   2019 WL 1206486, at *9 n.5 (N.D. Cal. Mar. 14, 2019) ("Although a physical therapist

13   recommended on June 27, 2014, an orthopedic consultation, there is no evidence that a physical

14   therapist is in a superior position to the primary care provider to determine when an orthopedic

15   consultation is needed.").  Furthermore, the record does not indicate that the two doctors and the

16   physical therapist from 2007 and 2008 were specialists unlike the two orthopedic surgeons in

17   *Snow*.

18        One area of significant similarity between *Snow* and the instant case is that Defendants

19   failed to give a medical reason for the denial of the TENS unit.  Defendant Gamboa provided no

20   contemporaneous explanation for the denial.  ECF No. 70-14 ("Gamboa Depo.") at 85:16–18 ("Q.

21   What did you write as your rationale for denying TENS units?  A. I didn't write any.").  Nor did

22   Defendant Dunlap, the Chief Medical Executive of SVSP, and Defendant Lewis, the Deputy

23   Director of Policy and Risk Management Services at SVSP, provide any meaningful explanation

24   as to why the TENS unit was denied.  ECF No. 69-6 at A-1, A-2, A-13, A-14.

25        Defendant Dunlap now cites to two studies in support of the proposition that "[a]lthough

26   TENS is widely used for pain management, evidence for its effectiveness is controversial."

27

28   Case No. 17-CV-04375-LHK
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
     JUDGMENT

United States District Court
Northern District of California

1   Dunlap Decl. ¶ 13.  One study consists of "meta-analysis of nine trials" performed by the

2   American Academy of Neurology, that showed no improvement for patients with lower back pain

3   through the use of the TENS unit.  *Id.*  The existence of these studies weighs against a

4   determination that Defendant Gamboa's denial of the TENS unit was medically unacceptable.

5   However, the Court must assume for the sake of the instant motion that the TENS unit was already

6   proven to be "very effective" for Plaintiff's condition.  *Tauscher*, 931 F.3d at 962 (holding that a

7   court must "tak[e] the evidence and all reasonable inferences in the light most favorable to the

8   non-moving party" on a motion for summary judgment).

9       Moreover, on November 21, 2019, Defendant Gamboa testified in a deposition that he did

10  not remember what the medical justification for the denial of the TENS unit was.  Gamboa Depo.

11  at 85:16–18 ("Q. Can you tell me right now what medical justification was the basis for the denial

12  of the TENS unit?  A. I don't know.").  At summary judgment, Defendant Gamboa now offers a

13  declaration that claims that the TENS unit was denied because Defendant Gamboa believed that

14  "the [602 Appeal] requests were not medically necessary" because there was "insufficient

15  evidence regarding the TENS Unit to control chronic pain."  Gamboa Decl. ¶ 7.  However,

16  "[s]ummary judgment requires facts, not simply unsupported denials or rank speculation."

17  *McSherry v. City of Long Beach*, 584 F.3d 1129, 1138 (9th Cir. 2009).

18      As stated above, the Court must "tak[e] the evidence and all reasonable inferences in the

19  light most favorable to the non-moving party" on a motion for summary judgment.  *Tauscher*, 931

20  F.3d at 962.  As outlined above, doctors had previously determined that the TENS unit was "very

21  effective" for Plaintiff's condition.  Plaintiff reported severe pain to Defendant Gamboa, such that

22  Plaintiff was "not able to eat, not able to walk, not able to shower . . . [and] not able to sleep."

23  ECF No. 69-7 at B-14.  Plaintiff did not receive any pain treatment for over a month after

24  Defendant Gamboa denied the TENS unit.  Accordingly, although the issue is a close call, the

25  Court finds that there is a genuine issue of material fact as to whether Defendant Gamboa's denial

26  of the TENS unit "was 'medically unacceptable under the circumstances.'"  *Toguchi*, 391 F.3d at

27

28  Case No. 17-CV-04375-LHK
    ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
    JUDGMENT

30

United States District Court
Northern District of California

1058 (quoting *Jackson*, 90 F.3d at 332)).

By contrast, there is no genuine issue of material fact that Defendant Gamboa's decision to deny Plaintiff's requests for daily showers and single cell accommodations was medically unacceptable under the circumstances. The sole support for the proposition that Defendant Gamboa's denial of daily showers was medically unacceptable is the fact that one physical therapist recommended daily showers in 2008, five years before Defendant Gamboa denied Plaintiff's request for daily showers in 2013. ECF No. 70-22. Unlike the TENS unit, there is no evidence in the record that showers had ever served as an effective treatment for Plaintiff's pain. Moreover, as to the single cell accommodation request, the unrebutted evidence indicates that Defendant Gamboa lacked the authority to order such an arrangement for Plaintiff. 15 Cal. Code Regs. § 3999.394(b)(2) ("The following are not medically necessary accommodations and shall not be ordered by health care staff: . . . Housing including single cells, cell housing and dormitory housing, except for control of infectious disease or for mental health reasons as recommended by a Mental Health Interdisciplinary Treatment Team."). Further, even if Defendant Gamboa had the required authority, the mere fact that Plaintiff had been attacked by a fellow inmate on August 10, 2013 would not render Defendant Gamboa's decision not to provide single cell accommodations for Plaintiff "medically unacceptable." Indeed, the record is devoid of any further attacks after the 602 Appeal. Accordingly, the Court GRANTS Defendants' motion for summary judgment as to Defendant Gamboa's denial of daily showers and single cell accommodations.

The Court now turns to the second element of deliberate indifference as to Defendant Gamboa's denial of the TENS unit: whether the course of treatment was chosen in conscious disregard of an excessive risk to Plaintiff's health. *Toguchi*, 391 F.3d at 1058 (9th Cir. 2004). Here, Plaintiff directly informed Defendant Gamboa that Plaintiff's pain was so severe that Plaintiff was "not able to eat, not able to walk, not able to shower . . . [and] not able to sleep." ECF No. 69-7 at B-14. Moreover, direct evidence of the TENS unit's effectiveness was contained in Plaintiff's medical records, which it is reasonable to infer that Defendant Gamboa reviewed at

Case No. 17-CV-04375-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

the time of the 602 Appeal. ECF No. 70-6; ECF No. 70-22 at 1; ECF No. 70-26.  As discussed above, Defendant Gamboa was also unable to explain the medical justification for denial of the TENS unit at his deposition.  Gamboa Depo. at 85:16–18 ("Q. Can you tell me right now what medical justification was the basis for the denial of the TENS unit?  A. I don't know.").  As stated above, the Court must "tak[e] the evidence and all reasonable inferences in the light most favorable to the non-moving party" on a motion for summary judgment.  *Tauscher*, 931 F.3d at 962.  In light of the foregoing, and although this element is also a close call, the Court concludes there is also a genuine issue of material fact as to whether Defendant Gamboa consciously disregarded an excessive risk to Plaintiff when Defendant Gamboa denied the TENS unit.  *See, e.g.*, *Colwell v. Bannister*, 763 F.3d 1060, 1070 (9th Cir. 2014) (holding that "a reasonable jury could find that [Defendant], pursuant to a policy rather than a considered medical judgment, contributed to the decision to refuse treatment in conscious disregard of an excessive risk to [Plaintiff's health").

In sum, as to Plaintiff's 602 Appeal Claim against Defendant Gamboa, Plaintiff has failed to demonstrate that there is a genuine issue of material fact that the chosen course of treatment for Plaintiff "was 'medically unacceptable under the circumstances'" with respect to the denial of daily showers and single cell accommodations.  *Toguchi*, 391 F.3d at 1058 (quoting *Jackson*, 90 F.3d at 332).  Thus, the Court GRANTS Defendants' motion for summary judgment as to the 602 Appeal Claim against Defendant Gamboa to the extent that Plaintiff challenges the denial of daily showers and single cell accommodations.  However, there is a genuine issue of material fact as to whether Defendant Gamboa's decision to deny the TENS unit constituted deliberate indifference.  Thus, the Court DENIES Defendants' motion for summary judgment as to the 602 Appeal Claim against Defendant Gamboa to the extent that Plaintiff challenges the denial of the TENS unit.

## IV.    CONCLUSION

For the foregoing reasons, For the foregoing reasons, the Court rules as follows on Defendants' motion for summary judgment:

Case No. 17-CV-04375-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

- The motion for summary judgment on the Gabapentin Claims is GRANTED;
- The motion for summary judgment on the 602 Appeal Claims is GRANTED as to Defendants Bright, Dunlap, and Lewis;
- The motion for summary judgment on the 602 Appeal Claims is GRANTED as to Defendant Gamboa to the extent that Plaintiff challenges the denial of daily showers and single cell accommodations; and
- The motion for summary judgment on the 602 Appeal Claims is DENIED as to Defendant Gamboa to the extent that Plaintiff challenges the denial of the TENS unit.

**IT IS SO ORDERED.**

Dated: May 15, 2020

_Lucy H. Koh_
LUCY H. KOH
United States District Judge

Case No. 17-CV-04375-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT